UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL J. SANSOE, et al.,

    Plaintiffs,

    v.

FORD MOTOR COMPANY,

    Defendant.

_____/

No. C 13-5043 PJH

**ORDER DENYING DEFENDANT'S SPECIAL MOTION TO STRIKE**

Defendant's special motion to strike the complaint pursuant to California Code of Civil Procedure § 425.16 came on for hearing before this court on May 21, 2014. Plaintiffs appeared by their counsel Lawrence Gornick, Dennis Canty, and Jeffrey Kaiser, and defendant appeared by its counsel Frank Kelly, Amir Nassihi, and Kevin Underhill. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion.

**BACKGROUND**

This is a case filed as a proposed class action by plaintiffs Michael J. Sansoe ("Sansoe") and Eric Frazer dba DE Landscaping ("Frazer") against defendant Ford Motor Company ("Ford"), alleging violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq.; unlawful, unfair, and fraudulent business practices, in violation of California Business & Professions Code § 17200; violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750; and a claim for declaratory relief.

Plaintiffs filed the original complaint on October 29, 2013. On December 9, 2013, approximately six weeks after the original complaint was filed, the parties stipulated to the filing of the first amended complaint ("FAC"), which was then filed on December 10, 2013.

Pursuant to the same stipulation, Ford filed an answer to the FAC on January 14, 2014.

Each of the two named plaintiffs purchased new vehicles from Ford. Sansoe bought a Ford F250 truck in late 2007. During the next few years, he brought the truck to the dealer for warranty repairs on several occasions. On October 10, 2012, attorney Jon Jacobs wrote to Ford on Sansoe's behalf and threatened to sue if Ford did not replace Sansoe's truck or reimburse him. After reviewing the matter, Ford made a settlement offer in a letter dated October 24, 2012, addressed to Mr. Jabobs. Sansoe accepted the offer and signed a release.

Plaintiff Eric Frazer, who does business as DE Landscaping, bought a Ford F450 truck in late 2007. He also had numerous problems with the truck, and brought it in to the dealer on multiple occasions for warranty repairs. On November 8, 2012, Mr. Jacobs wrote to Ford on behalf of Frazer, threatening to sue if Ford did not replace Frazer's truck or reimburse him. After reviewing the matter, Ford made an offer in a letter dated December 14, 2012, addressed to Mr. Jabobs. Frazer eventually accepted the offer, and he too, signed a release.

Plaintiffs assert that in reacquiring the vehicles, Ford violated the "Lemon Law," Civil Code § 1790, et seq., by taking excessive and unpermitted deductions for "Wear and Tear," and also by requiring the owners to make certain improvements to the vehicles at their own expense before Ford would take the vehicles back.

Neither the original complaint nor the FAC mentions the settlements or releases, and does not reference the fact that an attorney had negotiated the settlements on plaintiffs' behalf. Ford asserts that it first learned that the disputes may have been settled when reviewing its claims files after plaintiffs filed the complaint in this action, and that it included the issue in its portion of the joint case management statement filed on February 6, 2014. In their portion of the joint statement, plaintiffs denied they had been "parties to 'agreements releasing claims,'" but added that even if they had been, they would dispute the legal effect of such agreements, suggesting that settlements and/or releases of Song-Beverly claims are legally precluded because that would constitute a "waiver" of the

act's protections under Civil Code § 1790.1.

Plaintiffs claimed they intended to move for partial summary judgment on "Ford's defense that plaintiffs have waived or released their claims," and Ford noted that it was "evaluating motion practice related to the prior settlements." At the case management conference on February 13, 2014, plaintiffs' counsel advised the court that they had just learned of the releases that week.

In lieu of setting pretrial dates, the court agreed to give the parties additional time so they could meet and confer regarding various matters including the issue of the releases and a proposed schedule for class certification and early dispositive motions. The court set the date for the further case management conference for April 10, 2014, which was later continued to June 5, 2014.

Based on the discussion at the case management conference, the court anticipated that one or both of the parties would be filing early motions for summary judgment, which the court had indicated it would authorize. However, on March 28, 2014, following a period of back-and-forth emails and other communications following the initial CMC conference, Ford filed the present motion – a special motion to strike under California's anti-SLAPP statute, Cal. Civ. P. Code § 425.16.

**DISCUSSION**

A.   Legal Standard

Under California law, Strategic Litigation Against Public Participation (SLAPP) suits masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so. Cal. Civ. P. Code § 425.16. California's anti-SLAPP statute authorizes the filing of a "special motion to strike" any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution . . . in connection with a public issue." Cal. Civ. P. Code § 425.16(b)(1); Flatley v. Mauro, 39 Cal. 4th 299, 311-12 (2006). Acts in furtherance of the right of petition include "any written or oral statement or writing made in connection with an issue under consideration or review by

1    a . . . judicial body." Id. § 425.16(e)(2).  The special motion "may be filed within 60 days of
2    the service of the complaint, or, in the court's discretion, at any later time upon terms it
3    deems proper."  Cal. Civ. P. Code § 425.16(f).
4        An anti-SLAPP motion is available to defendants in federal court.  See Thomas v.
5    Fry's Elecs., Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam); see also
6    Graham-Sult v. Clainos, __ F.3d __, 2014 WL 444153, at *4 (9th Cir. Feb. 5, 2014).  The
7    statute is to be interpreted broadly.  See, e.g., Greater Los Angeles Agency on Deafness,
8    Inc. v. Cable News Network, Inc. ("GLAAD"), 742 F.3d 414, 421-22 (9th Cir. 2014); Tuck
9    Beckstoffer Wines LLC v. Ultimate Distributors, Inc., 682 F. Supp. 2d 1003, 1008-09 (N.D.
10   Cal. 2010).
11       In determining whether an action must be stricken under the anti-SLAPP statute, the
12   court engages in a two-step inquiry.  GLAAD, 742 F.3d at 422 (citing Navellier v. Sletten,
13   29 Cal. 4th 82, 88 (2002)).  First, the court asks whether the defendant has made a prima
14   facie showing that the plaintiff's cause of action arises from conduct in furtherance of the
15   exercise of the defendant's constitutional right of petition or right of free speech in
16   connection with an issue of public interest.  Id.  Second, if the defendant makes this
17   showing, the burden shifts to the plaintiff to "establish, by competent evidence, a probability
18   that it will prevail on its [claims]."  Id.  Only a cause of action that satisfies both prongs of
19   the anti-SLAPP statute – i.e., one that arises from protected speech or petitioning, and
20   lacks even minimal merit – is a SLAPP, subject to being stricken under the statute.
21   Navellier, 29 Cal. 4th at 89.  In evaluating the motion, the court considers "the pleadings,
22   and supporting and opposing affidavits stating the facts upon which the liability or defense
23   is based."  GLAAD, 742 F.3d at 422 (quoting Cal. Civ. P. Code § 425.16(b)(2)).
24   B.   Defendant's Motion
25       Ford seeks an order striking the complaint.  Ford argues, first, that plaintiffs' causes
26   of action arise from the protected activity of engaging in settlement discussions regarding
27   threatened litigation.  The anti-SLAPP statute defines four kinds of conduct that may
28   constitute acts "in furtherance of a person's right of petition or free speech" for purposes of

the statute. Cal. Civ. P. Code § 425.16(e). Here, Ford asserts, its alleged conduct falls within the second category, "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. P. Code § 425.16(e)(2).

Ford acknowledges that on its face, this language might be read as limited to communications directed to an official body during its review, but argues that it is much broader than that. Ford asserts that the communications need not be made in court or even directed to the court, and that there does not need to be an official proceeding underway at all. See Graham-Sult, 2014 WL 444153 at *7 ("[C]onduct can be protected by the anti-SLAPP statute even though no issue is yet under consideration by a judicial body at the time the defendant engages in the conduct"); Tuck Beckstoffer Wines, 682 F. Supp. 2d at 1015 (pre-litigation conduct is protected).

Ford agrees that there is a limit, because the statute requires an act "in connection with" litigation; but asserts that the degree of connection required is minimal, and notes that the California Supreme Court has held that a prelitigation communication is privileged so long as it "relates to litigation that is contemplated in good faith and under serious consideration." See Action Apartment Assn., Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1251 (2007); Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1115 (1999) ("communications preparatory to or in anticipation of" litigation are entitled to protection); Neville v. Chudacoff, 160 Cal. App. 4th 1255, 1264-69 (2008) (statute applied where evidence showed there had been a "threat of impending litigation").

Here, Ford contends, there is no question that this requirement is met, because the settlement offers were made in response to a letter from plaintiffs' former attorney, Mr. Jacobs, expressly threatening to sue, and requesting a settlement offer. A number of courts have held that statements made during settlement negotiations are protected conduct, so that causes of action based on them are subject to anti-SLAPP motions. See, e.g., Navellier, 29 Cal. 4th at 90 (holding court correctly dismissed claim alleging release had been fraudulently obtained); Seltzer v. Barnes, 182 Cal. App. 4th 953, 963-64

(2010) (similar holding; citing other cases); Fleming v. Coverstone, 2009 WL 764887, at *4 (S.D. Cal. Mar. 18, 2009) (holding email arguing about terms of alleged deal was protected conduct); Blanchard v. DirecTV, 123 Cal. App. 4th 903, 909 (2004) (holding that the act of sending demand letters was protected conduct).

While some of the above-cited cases involved settlement negotiations that took place after a lawsuit had been filed, Blanchard involved a claim that the defendant DirecTV sent demand letters to thousands of people who bought devices capable of pirating its programs, and the plaintiff and others who received the letters sued DirecTV alleging that this was an unfair and fraudulent business practice. See 123 Cal. App. 4th at 909. The Court of Appeal pointed out that the plaintiffs could not successfully argue that their complaint did not arise from protected acts because "[t]he entire lawsuit is premised on DirecTV's demand letter, sent in advance of, or to avoid, litigation to vindicate its right not to have its programming pirated." Id. at 918.

Ford argues that in the present case, plaintiffs' claims – that "Ford insisted, as a condition of reacquiring Lemon Cars pursuant to the Lemon Law, that [p]laintiffs and other class members pay to remedy what Ford claimed was Wear and Tear, or to accept a reduction in the repurchase price for said Wear and Tear, in addition to the Statutory Mileage Formula deduction," FAC ¶ 10 – arise from protected activity because they are based on allegedly illegal settlement offers and other statements. Ford argues that this theory is the gravamen of the entire case.

Ford contends that it is undisputed that both sides "contemplated" litigation at the time of the discussions that led to the settlements, because plaintiffs' former lawyer Mr. Jacobs threatened legal action in his initial demand letters. Ford argues that under Blanchard and similar cases, a cause of action based on those letters would unquestionably be subject to being stricken under the anti-SLAPP statute, and argues that there is no reason to treat Ford's offers differently, as a demand letter is itself an offer to settle. For this reason, Ford contends, its responses to Mr. Jacob's letters were protected conduct.

6

In its second main argument, Ford contends that plaintiffs will be unable to show a probability that they will prevail on their claims, for four reasons – because plaintiffs have already settled their claims; because the claims are barred by the litigation privilege; because the complaint is not legally sufficient as it is not pled with particularity and does not allege a duty to disclose or justifiable reliance, among other things; and because plaintiffs have not alleged any harm caused by Ford and thus lack standing under § 17200.

The court finds that the motion must be DENIED. As an initial matter, the court finds that the motion was untimely, as it was not filed within 60 days of the date plaintiffs filed the FAC. Under Civil Code § 425.16(f), an anti-SLAPP motion "may be filed within 60 days of the service of the complaint, or, in the court's discretion, at any later time upon which terms it deems proper." Here, the complaint was filed on October 29, 2013, and the FAC was filed on December 10, 2013. The anti-SLAPP motion was filed on March 28, 2014, three-and-a-half months after the FAC was filed. Thus, even counting from the filing of the FAC,[1] well over 60 days elapsed between the filing of the FAC and the filing of the anti-SLAPP motion.

Ford neither requested leave of court to file the motion after the 60 days had elapsed, nor provided any persuasive justification in its moving papers for the late filing. Were that the only problem with Ford's motion, the court might be inclined to offer Ford the opportunity to further brief the issue. However, the court finds that Ford has not made out a prima facie case that the causes of action asserted in the FAC "arise from" Ford's protected activity.

The acts that form the basis of plaintiffs' claims are Ford's alleged deductions from the repurchase price of the Lemon vehicles for claimed Wear and Tear as a condition of completing the re-acquisition transaction. While it may be that Ford's written response to plaintiffs' counsel's demand letter was a protected activity, plaintiffs' causes of action do primarily not arise from Ford's written response, but rather from the alleged act or practice

---

[1] "The 60-day period commences with the service of the most recent complaint or amended complaint in the action." Olsen v. Harbison, 134 Cal. App. 4th 278, 286 (2005).

7

of deducting from the repurchase price amounts that plaintiffs assert were not authorized deductions under the Song-Beverly Act.

The court "must focus on 'the substance of' the lawsuit to determine whether it arose from [a party's] protected activities." Scott v. Metabolife Int'l, Inc., 115 Cal. App. 4th 404, 413-14 (2004) (quoting City of Cotati v. Cashman, 29 Cal. 4th 69, 78 (2002)). That is, "it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." Id. at 414 (citing City of Cotati, 29 Cal. 4th at 79).

> [W]hen allegations of nonprotected activity are incidental or collateral to a plaintiff's claim challenging primarily the exercise of the rights of free speech or petition, they may be disregarded in determining whether the cause of action arises from protected activity. Conversely, if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion.

Id. at 414-15 (citing Paul v. Friedman, 95 Cal. App. 4th 853, 866 (2002)). Here, the allegations regarding protected activity (the statements made in connection with the settlement negotiations) are only incidental to the claims involving unprotected activity (the alleged overcharging for "Wear and Tear"). Accordingly, Ford has not met its burden with regard to the first step of the two-step inquiry.

Because the court finds that Ford has not made a prima facie showing that plaintiffs' claims "arise from" Ford's protected activity, there is no necessity for the court to consider whether plaintiffs have shown that they are likely to prevail on their claims.[2]

## CONCLUSION

In accordance with the foregoing, the court DENIES the motion.

**IT IS SO ORDERED.**

Dated: May 29, 2014

PHYLLIS J. HAMILTON
United States District Judge

---

[2] Nor should any party interpret the court's ruling as reflecting a position vis-à-vis the merits of plaintiffs' claims.